

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 31, 2026

**By Email & ECF**
The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    *United States v. Henry Boone*, S4 23 Cr. 328 (JPO)
        *United States v. Henry Boone*, S2 02 Cr. 1185 (JPO)

Dear Judge Oetken:

The Government respectfully submits this letter in advance of the August 7, 2026 sentencing of defendant Henry Boone and in response to the defendant's sentencing submission dated July 24, 2026.  The Court will impose two sentences in this case: one as to the defendant's guilty plea to possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1), and one as to the defendant's admission to violating the terms of his supervised release.  For the reasons below, the Government respectfully submits that the Court impose consecutive sentences of 41 months and 27 months' imprisonment, respectively—the top of the Stipulated Guidelines Ranges for the new criminal conviction and the supervised release violations.  Such sentences would be sufficient but not greater than necessary to achieve the goals of sentencing.

I.    **Background**

    A.    **Offense Conduct**

On March 17, 2023, at approximately 9:30 p.m., New York City Police Department officers patrolling on Webster Avenue in the Bronx, New York, observed the defendant standing with another man and three unleashed pit bulls in a playground in front of the Butler Houses, a New York City Housing Authority complex.  (Presentence Investigation Report ("PSR") ¶ 6.)  Two of the officers ("Officer-1" and "Officer-2") exited their vehicle and approached the defendant.  (*Id*. ¶ 7.)  Officer-1 asked the defendant if the unleashed dogs belonged to him; the defendant answered yes.  (*Id*.)  Officer-1 repeatedly instructed the defendant to tie up the dogs and come talk to them.  (*Id*.)  The defendant briefly grabbed the chain linking the dogs to each other before letting go of the chain.  (*Id*.)  The defendant walked away from the officers, out the entrance to the other side of the park, and then fled, running northbound toward 1458 Webster Avenue, an adjacent NYCHA building (the "Building").  (*Id*.)  The officers pursued the defendant. (*Id*.)

1

Officer-2 was the first to locate the defendant in the hallway of the third floor of the Building. (*Id.* ¶ 8.) When Officer-2 attempted to arrest the defendant, the defendant resisted arrest, struggling with Officer-2, and stated, in substance, "You guys have to kill me I'm not going." (*Id.*) Additional officers arrived at the scene and assisted in attempting to handcuff the defendant. The defendant was brought to the ground, and one hand was handcuffed, but the defendant continued to struggle. (*Id.*) Officer-2 suffered a sprained ankle as a result of the struggle. (*Id.* ¶ 15.)

As the officers attempted to handcuff the defendant's second hand, one of them ("Officer-3") yelled, "Gun! Gun! Gun! Gun!" and recovered a firearm from underneath the defendant's person (*see* Figure 1, a still image from NYPD body worn camera). (*Id.* ¶ 8.)



*Figure 1*

Thereafter, the defendant continued to struggle, and the officers handcuffed the defendant's second hand. (*Id.*) When the officers lifted the defendant off the ground to transport him from the Building, they recovered a second firearm on the ground directly underneath where the defendant had been (*see* Figure 2, a still image from NYPD body worn camera). (*Id.*)



*Figure 2*

In a *Mirandized* post-arrest statement, the defendant admitted that he fled from the officers; that he had a gun (specifically, the first gun recovered from the defendant); and that he had been resisting arrest. (*Id.* ¶ 10.) The defendant denied possessing a second firearm. (*Id.*)

Law enforcement officers determined that the firearms the defendant possessed were (a) a nine-millimeter Luger caliber semi-automatic Ruger model LC9 pistol loaded with seven bullets, and (b) a nine-millimeter Luger caliber semiautomatic Taurus model Gc3 pistol loaded with fifteen bullets. (*Id*. ¶ 11.) The Taurus was determined to be stolen. (*Id*.) Both firearms were operable and manufactured outside of New York. (*Id*.)

## B.    Criminal History

In 1992, the defendant was convicted as a Juvenile Offender in Bronx County Supreme Court of robbery in the second degree, in violation of New York Penal Law § 160.10, and sentenced to a term of imprisonment of 1 to 3 years. (PSR ¶ 31.) As described in the PSR, the defendant, with multiple co-conspirators, approached a 13-year-old male victim; the defendant grabbed the victim while others surrounded him and demanded money; and when the victim refused, one co-conspirator pointed a sawed-off shotgun at his head, and another took $100. (PSR ¶ 31.) The defendant and another co-conspirator then punched the victim in the head several times. (PSR ¶ 31.) The Second Circuit has held that "robbery in any degree in New York" constitutes a crime of violence. *See, e.g.*, *Brunstorff v. United States*, 754 F. App'x 48, 49 (2d Cir. 2019).

In 1993, the defendant was convicted in Bronx County Supreme Court of attempted robbery in the second degree, aided by another, in violation of NYPL Sections 110-160.10(01), and sentenced to a term of imprisonment of 30 months to 5 years. (PSR ¶ 32.) As described in the PSR, the defendant, with a co-conspirator, approached a female victim; the defendant's co-conspirator brandished a shotgun and demanded money; the defendant punched the victim in the chest; and the defendant robbed the victim of $222. (PSR ¶ 32.)

In 1996, the defendant was convicted in Bronx County Supreme Court of attempted assault in the first degree, in violation of NYPL Sections 110-120.10, and sentenced to a term of imprisonment of 30 months to 5 years. (PSR ¶ 33.)[1] This Court held that the defendant's 1996 conviction constitutes a crime of violence. (Dkt. 63 (Tr. of Sept. 25, 2024 Conference).)

In November 2003, the defendant was convicted following a jury trial in the United States District Court for the Southern District of New York on five counts: (1) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a) and (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (3) possession of a firearm with a defaced serial number, in violation of 18 U.S.C. § 922(k); (4) possession of a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(2), which included a sentencing enhancement pursuant to the Armed Career Criminal Act ("ACCA"); and (5) possession of ammunition after a felony conviction, in violation of 18 U.S.C.

---

[1] The factual description contained in the PSR may not be accurate (notwithstanding that the defendant did not object that factual description here). At his federal sentencing in the 2003 case, the defendant objected to the factual description as to the 1996 crime. (Tr. of May 13, 2004 Sentencing, *United States v. Boone*, 02 Cr. 1185 (RPP)) at 5-9.)

§ 922(g)(1).    (PSR ¶ 34.) Following multiple resentencings, the defendant ultimately was sentenced to a total term of imprisonment of 200 months, together with a five-year term of supervised release.  (PSR ¶ 34.)  The defendant was released from prison in or around March 2021 and began his term of supervised release.  (PSR ¶ 34.)  The defendant thus committed the instant offense conduct while on supervised release.  (PSR ¶ 34.)

### C.       Procedural History

On March 17, 2003, the defendant was arrested by NYPD officers in connection with this case and thereafter charged by the Bronx District Attorney's Office with criminal possession of a weapon (Case No. 40963/2023).

On March 18, 2023, the United States Probation Office filed a supervised release violation report charging the defendant with several specifications relating to his March 17 arrest.

On June 28, 2023, a grand jury sitting in this District returned an indictment (the "Indictment") charging the defendant with one count of possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) ("Count One").  (Dkt. 1.)  The defendant was re-arrested on July 5, 2023, presented in this District, and ordered detained.  (Dkt. 4.)

In advance of trial, a grand jury returned successive superseding indictments to add (and thereafter correct) allegations placing the defendant on notice that, in light of the 1992, 1996, and 2003 convictions described above, the defendant was subject to a sentencing enhancement pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  (Dkt. 20, 101, 115, 132.)

On January 13, 2026, the Court issued a minute entry order stating that "it anticipates issuing a decision . . . precluding use of Defendant's 1992 offense as an ACCA predicate."  (Dkt. 136.)  Trial was thereafter adjourned.  (Dkt. 139.)

On February 24, 2026, the Probation Office filed an amended supervised release violation report (the "Violation Report") alleging that the defendant had committed seven specifications arising out of the March 17, 2023 incident.  As relevant here, violating the conditions of his supervised release imposed in connection with the 2003 conviction described above, including by possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).

On April 27, 2026, pursuant to a written plea agreement (the "Plea Agreement"), the defendant (a) pleaded guilty to Count One of the Indictment; (b) admitted to violating Specification Two of the Violation Report, charging the defendant with assault in the second degree, impeding a police officer from performing a lawful duty, in violation of New York Penal Law ("NYPL") § 120.05(03); and (c) admitted to violating Specification Seven of the Violation Report, charging the defendant with possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (together with (b), the "Supervised Release Violation").

### D.       The Guidelines Calculations

In the Plea Agreement, the parties agreed that the United States Sentencing Guidelines (the "Guidelines") range as to Count One of the Indictment is 33 to 41 months' imprisonment (the

"Stipulated Offense Guidelines Range"), based on a total offense level of 19 and a Criminal History Category of II. The Probation Office reached the same Guidelines calculation. (PSR ¶¶ 20-29, 31-34, 37, 71.)

The parties further agreed in the Plea Agreement that the Guidelines range as to the Supervised Release Violation is 21 to 27 months' imprisonment (the "Stipulated VOSR Guidelines Range"), because the defendant's Criminal History Category was VI at the time of sentencing following the 2003 conviction, and because the violations are a Grade B violation. *See* 18 U.S.C. § 3583(e)(3).

## II.    **Discussion**

### A.    **Applicable Law**

The Guidelines continue to provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings, *id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. §§ 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

A sentencing court may consider "any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563-64 (1984); *accord Pepper v. United States*, 562 U. S. 476, 488 (2011). "Highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*¸ 337 U.S. 241, 247 (1949). Sentencing judges regularly consider a defendant's risk of recidivism and failure to be deterred by previous sentences. *See, e.g.*, *United States v. Guzman*, No. 21-441, 2022 WL 1409583, at *2-3 (2d Cir. May 4, 2022); *United States v. Moore*, 17 Cr. 7 (JGK), 2022 WL 934061, at *2 (S.D.N.Y. Mar. 29, 2022).

**B.      Count One of the Indictment: A Sentence at the Top of the Stipulated Offense Guidelines Range is Necessary**

A sentence of 41 months' imprisonment, at the top of the Stipulated Guidelines Range, is necessary to reflect the nature and seriousness of the offense and the defendant's criminal history, to promote respect for the law, to afford adequate deterrence, to protect the public, and to avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a).

*First*, the defendant's offense conduct was highly dangerous.  The defendant was armed with two loaded guns in a public place.  After being approached by officers, the defendant fled and physically resisted being arrested or searched, causing injury to an NYPD officer.  While resisting arrest, the defendant prevented officers from locating or removing the firearms he had concealed in his clothing, and shouted "You guys have to kill me I'm not going."  The defendant's conduct posed a serious risk of death or injury to innocent bystanders, the arresting officers, and himself.

The serious offense conduct here is compounded by, *second*, the defendant's criminal history, which is extensive and violent.  As described above, in New York State, the defendant sustained robbery convictions in 1992 and 1993 and an attempted assault conviction in 1996.  (PSR ¶¶ 31-33.)  As a result of those convictions, the defendant spent much of the 1990s in prison.  Upon release, however, the defendant did not lead a law-abiding life.  In 2003, the defendant sustained federal narcotics and firearms convictions, which resulted in the defendant's imprisonment for nearly twenty years.  (PSR ¶ 34.)  Upon release and while on supervision, the defendant yet again chose, in connection with this case, to unlawfully possess firearms and to engage in dangerous conduct.  His history and characteristics, specifically his extensive and violent criminal history, therefore weigh in favor of a substantial sentence here.

*Third*, a substantial sentence is necessary to protect the public from potential future crimes the defendant may commit.  The defendant has repeatedly unlawfully possessed firearms and has repeatedly resorted to violence and dangerous conduct.  Additionally, as to general deterrence, a substantial sentence would send an appropriate message to those similarly situated that unlawful possession of firearms (particularly stolen firearms) will lead to sanctions that are commensurate with the dangers and harms such actions inflict on communities.

The Government is not unsympathetic to the difficult circumstances of the defendant's life. As described in the defendant's sentencing letter ("Def. Ltr."), the defendant grew up ███████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Def. Ltr. 3-6.)[2]  The Government also recognizes and credits that, at least during this latest period of incarceration, the

---

[2] In describing the defendant's personal history, the defense letter entirely ignores the 1992, 1993, and 1996 criminal convictions the defendant sustained, writing only that "[d]ue to escalating illegal conduct in and around the Butler Houses," the defendant "spent almost the entirety of his teenager years in detention facilities."  (Def. Ltr. 7.)

defendant has taken steps to rehabilitate, including through education and art.  (Def. Ltr. 2, 9.)[3] These are not insignificant mitigating factors, but they do not outweigh the defendant's serious and dangerous offense conduct or the defendant's lengthy history of violent criminal conduct, including unlawful firearms possession.[4]

### C.    Supervised Release Violation: A Sentence at the Top of the Stipulated VOSR Guidelines Range is Necessary

#### i.    Applicable Law

The Court may revoke a term of supervised release upon a finding by a preponderance of the evidence that the defendant violated a condition of supervised release.  18 U.S.C. § 3583(e)(3). When a district court considers whether to revoke a term of supervised release and impose a new sentence based on the defendant's violations of conditions of supervised release, the court considers only a subset of the Section 3553(a) factors—specifically, "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e). These factors include the nature and circumstances of the offense, the history and characteristics of the supervisee, the need to afford adequate deterrence to criminal conduct and protect the public from further crimes of the supervisee, and the applicable Guidelines range.  *Id.*  The Court may not consider the so-called "retributive" factors—*i.e.*, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense—under Section 3553(a)(2)(A).  *See Esteras v. United States*, 606 U.S. 185, 204 (2025); *United States v. Kerr*, 25-1062, 2026 WL 796521, at *1 (2d Cir. Mar. 23, 2026) (explaining that, under *Esteras*, "courts may not exact retribution for the defendant's original criminal offense in a supervised release revocation proceeding" (internal quotation marks omitted)).

The primary goal of a revocation sentence is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release.  U.S.S.G. Ch. 7, Pt. A(3)(b); *see also United States v. Fernandez*, 25-206, 2025 WL 2433528, at *6 (2d Cir. Aug. 25, 2025) (noting that "supervised release . . . is a part of a defendant's original sentence, and the consequences of violating the terms of supervised release authorized by that sentence are . . . a

---

[3] The PSR reflects that, in prior periods of incarceration, the defendant sustained numerous disciplinary sanctions, including for weapons possession, narcotics possession, fighting, assault of staff, and smuggling.  (PSR ¶¶ 32, 34.)

[4] The defendant also argues that the conditions at MDC Brooklyn, where he has spent much of his confinement to date, warrant a reduced sentence.  (Def. Ltr. 14-15 (citing cases from 2023 and 2024).)  Multiple judges of this court have recently recognized in 2025 and 2026 that the Bureau of Prisons has implemented significant reforms to address staffing, safety, and sanitation issues, and that the facility's operations have stabilized.  *See, e.g.*, *United States v. Carazas-Pinez*, No. 23 Cr. 346 (JPC) (Sept. 19, 2025 sentencing); *United States v. McCullum*, No. 24 Cr. 667 (JPC) (Aug. 29, 2025 sentencing); *United States v. Burgos*, No. 24 Cr. 650 (LTS) (May 21, 2025 plea); *United States v. Reshard*, No. 24 Cr. 392 (JMF) (May 14, 2025 sentencing); *United States v. Alexander*, No. 24 Cr. 676 (VEC) (Jan. 16, 2025 bail argument).  The defendant's claims about the MDC do not justify a reduction in sentence here.

sanction for breaching the trust that justified the defendant's conditional liberty"); *United States v. Ramos*, 979 F.3d 994, 1002 (2d Cir. 2020) (similar).  Nonetheless, "the nature of the conduct leading to the revocation" is appropriately considered "in measuring the extent of the breach of trust."  U.S.S.G. Ch. 7, Pt. A(3)(b); *see id.* (under the approach adopted by the Sentencing Commission, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator"); *United States v. Castro*, No. 25-1076, 2026 WL 1098599 at *2 (2d Cir. Apr. 23, 2026) ("we have long recognized that district courts may consider the seriousness of the conduct underlying a violation of supervised release when imposing a new sentence following revocation.").

Pursuant to U.S.S.G. § 7B1.3(f), a violation sentence shall be served consecutively to any other sentence, whether or not any other sentence of imprisonment resulted from the conduct that is the basis of a revocation of supervised release.  *See also* U.S.S.G. § 7B1.3(f), Application Note 3 ("[I]t is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation be run consecutively to any term of imprisonment imposed upon revocation.").

### ii.  A Top-of-Guidelines Sentence is Warranted

The Court should impose a top-of-Guidelines sentence of 27 months' imprisonment, imposed consecutively to the sentence imposed as to Count One of the Indictment.  Such a sentence would appropriately account for the applicable sentencing factors under Section 3583(e), including protection of the public and specific deterrence for largely the same reasons described above. Primarily, however, such a consecutive sentence is necessary to account for the defendant's serious breach of the Court's trust.  Rather than use his period of supervised release to make meaningful changes in his life, the defendant instead returned to criminal activity by possessing two loaded firearms, one of which was stolen, and by resisting arrest.  This conduct is an egregious violation of the terms of the defendant's supervised release, and made more so by his serial non-compliance with terms of supervision and parole.

### III.  Forfeiture

Pursuant to the Plea Agreement, the parties agreed that the defendant must forfeit the firearms and ammunition used in furtherance of the offense conduct.  Attached as **Exhibit A** is an unexecuted copy of the consent preliminary order of forfeiture.

### IV.  Supervised Release

Pursuant to 18 U.S.C. § 3583(b)(2), the maximum term of supervised release is three years. For the reasons stated herein, and in particular given the defendant's lengthy criminal history and criminal conduct while on supervised release, a three-year term of supervised release, with each of the special conditions recommended by the Probation Office (PSR at 27-29), is appropriate.[5]

---

[5] The defendant objects to the  electronic search condition on the basis that the offense did not involve the use of an electronic device.  (Def. Ltr. 13 n.8.)  But courts have imposed electronic search conditions in similar Section 922(g) cases even where the offense conduct did not involve

The Government further recommends that the Court impose an outpatient mental health treatment condition, consistent with the defendant's own suggestion.  (Def. Ltr. 20 & Ex. L.)[6]

## V.    Conclusion

For the reasons set forth above, the Government respectfully requests that the Court (a) impose a term of imprisonment of 41 months on Count One, (b) impose a consecutive term of imprisonment of 27 months on the Supervised Release Violation, (c) order forfeiture as set forth in Exhibit A, and (d) impose a three-year term of supervised release with the special conditions described above.  Such a sentence would be sufficient but not greater than necessary to serve the

---

an electronic device.  *See, e.g.*, *United States v. Arguedas*, 134 F.4th 54, 70 (2d Cir. 2025) (noting that evidence of use of electronic devices in furtherance of offense conduct is not required for imposition of electronic search condition); *United States v. Lawrence*, 139 F.4th 115, 125 (2d Cir. 2025) (holding that "the search condition did not need to have a direct relationship to [defendant's] offense," and explaining that "we have never held that an electronic search term would only be appropriate if a defendant's convictions involved the use of electronics"); *United States v. Robinson*, 134 F.4th 104, 112 & n.3 (2d Cir. 2025) (affirming electronic search condition in gun possession case where defendant had not used electronic devices in connection with offense, and stating: "Although the justification for electronic search portion of the condition would be even more apparent if [defendant's] convictions involved . . . the use of electronics, we have never held that an electronic search term would only be appropriate in those circumstances.").  The search condition reasonably relates to the important interests of protecting the public and deterring recidivism, given the defendant's history and characteristics.  The defendant has a history of committing violent offenses and possessing illegal guns.  Evidence of such offenses is commonly found on electronic devices, such as cellphones, and in the cloud.  For example, the location data on a cellphone might help locate a defendant at the scene of a crime and the images and videos stored on an electronic device or in the cloud might show guns or other images tying a defendant to a crime.  The intrusion into the defendant's liberty imposed by this portion of the search condition is justified by the need to quickly and efficiently identify a threat of recidivism and to protect the public if there is reasonable suspicion to believe that the defendant has violated a term of his supervised release or committed further criminal acts.

[6] The Government respectfully requests that, for each special condition imposed, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b).

legitimate purposes of sentencing.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney


By:        ___/s/_____
           Jessica Greenwood
           Kevin Grossinger
           Amanda Weingarten
           Assistant United States Attorneys
           (212) 637-1090/2426/2257